determined at the time a suit is commenced, it is possible that due to future events, this legal situation could change. Although it seems unlikely under the facts of this case, if, for example, appellees were to relocate to Nebraska, then personal jurisdiction over appellees in a subsequent suit could be proper in this state.

We also note that in this case, both parties agreed in briefs and in arguments before this court that the dismissal should have been without prejudice. For these reasons, we find that the district court erred in dismissing the case with prejudice and its judgment is ordered modified to a dismissal without prejudice.

## VI. CONCLUSION

For the foregoing reasons, the decision of the district court is affirmed as modified.

Affirmed as modified.

Wright, Connolly, and Miller-Lerman, JJ., not participating.

———————————

Christopher M. Payne, appellant, v.
Nebraska Department of Correctional
Services et al., appellees.
___ N.W.2d ___

Filed June 13, 2014.    No. S-13-627.

1. **Administrative Law: Judgments: Appeal and Error.** A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act, Neb. Rev. Stat. §§ 84-901 to 84-920 (Reissue 2008, Cum. Supp. 2012 & Supp. 2013), may be reversed, vacated, or modified by an appellate court for errors appearing on the record.
2. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.
3. **Constitutional Law: Prisoners: Courts.** The U.S. Constitution guarantees prisoners a right to access the courts.
4. **Prisoners: Courts: Words and Phrases.** Meaningful access to the courts is the capability to bring actions seeking new trials, release from confinement, or vindication of fundamental civil rights.

5. **Constitutional Law: Prisoners: Courts.** The constitutional right to access the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.

6. **Prisoners: Courts.** The right of access to the courts does not afford prisoners unlimited access to prison law libraries.

7. ____: ____. The number of hours of library access alone is not determinative of whether a prisoner's right to access the court has been violated.

8. **Prisoners: Courts: Claims: Damages: Proof.** To establish a violation of the right of meaningful access to the courts, a prisoner must establish the State has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.

9. **Constitutional Law: Prisoners: Courts.** The State is not obligated under the Constitution to enable inmates to litigate effectively once in court.

10. ____: ____: ____. Access to legal materials under the constitutional right to access the courts is required only for unrepresented litigants.

Appeal from the District Court for Lancaster County: John A. Colborn, Judge. Affirmed.

Christopher M. Payne, pro se.

Jon Bruning, Attorney General, and Amie Larson for appellees.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

McCormack, J.

## NATURE OF CASE

Christopher M. Payne, an inmate incarcerated at the Tecumseh State Correctional Institution (TSCI), challenges TSCI operational memorandums that generally limit an inmate's access to the law library to 1 hour per day. The district court for Lancaster County granted summary judgment and found that Payne failed to prove an actual injury caused by the library time regulations. Payne now appeals.

## BACKGROUND

On November 21, 2011, Payne filed a petition for declaratory judgment pursuant to Nebraska's Administrative

Procedure Act,[1] alleging that TSCI operational memorandums Nos. 107.01.01(II)(A)(3) and 116.01.02(III)(A)(3) were invalid and unconstitutional because they restrict his law library time in violation of his right to access the courts. Payne also requested that any other Nebraska Department of Correctional Services or TSCI regulation which limits or restricts his access to the law library be found invalid. Payne named the Department of Correctional Services, the warden of TSCI, and the librarian of TSCI as defendants. In his petition, Payne alleges that he had four other civil actions and two criminal postconviction actions that he had filed or that he had planned on filing. One of his postconviction actions was being handled by counsel, and the rest were being undertaken pro se. He alleges additional law library time is necessary to litigate those actions.

Inmates in the general population at TSCI are allowed 1 hour of law library time per day. To receive library time, inmates are required to request a library pass. The library pass regulations are outlined in TSCI operational memorandum No. 107.01.01. TSCI issues passes to the library for every inmate who seeks access; however, there is a library capacity limit of 28 total people, which includes inmates, inmate workers, and staff. The pass system was designed to help ensure that the number of people in the library does not exceed the library's capacity. According to the librarian of TSCI, unrestricted access to the library is not possible, because all inmates are allowed access to the law library services. Without the pass system, TSCI would be unable to provide availability to all inmates.

If an inmate has a court date and shows he has an exigent circumstance, he may request and be allowed an extra hour of library time temporarily. The inmate is required to request the extra hour of law library time 30 days in advance.

In the library, inmates are allowed to make photocopies for legal purposes, including legal documents. Inmates are allowed

---

[1] See Neb. Rev. Stat. §§ 84-901 to 84-920 (Reissue 2008, Cum. Supp. 2012 & Supp. 2013).

to make notes during law library time so that they can continue to work in their living unit. The law library is intended to be for legal research only.

Ultimately, the district court granted summary judgment in favor of the defendants and found that there was no genuine issue of material fact that Payne did not show an actual injury to a nonfrivolous and arguably meritorious claim as a result of the challenged TSCI regulations and the limits on his access to the law library.

## ASSIGNMENTS OF ERROR

Payne assigns that the district court erred in (1) applying the federal standard for determining standing on this state law claim and (2) finding that the defendants were entitled to judgment as a matter of law.

## STANDARD OF REVIEW

[1] A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act, §§ 84-901 to 84-920, may be reversed, vacated, or modified by an appellate court for errors appearing on the record.[2]

[2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[3]

## ANALYSIS

The primary issue for this appeal is whether the 1-hour-per-day regulation on Payne's law library time created an actual injury sufficient to meaningfully deny Payne access to the courts. We find that Payne did not prove an actual injury, and we affirm the district court's order.

---

[2] *Gridiron Mgmt. Group v. Travelers Indemnity Co.*, 286 Neb. 901, 839 N.W.2d 324 (2013).

[3] *Potter v. Board of Regents*, 287 Neb. 732, 844 N.W.2d 741 (2014).

[3-5] The U.S. Constitution guarantees prisoners a right to access the courts.[4] Meaningful access to the courts is the capability to bring "'actions seeking new trials, release from confinement, or vindication of fundamental civil rights.'"[5] This right "'requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.'"[6]

[6,7] However, there is not "an abstract, freestanding right to a law library or legal assistance," and therefore, "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense."[7] The right of access to the courts "'does not afford prisoners unlimited access to prison law libraries.'"[8] And the number of hours of library access alone is not determinative of whether a prisoner's right to access the court has been violated.[9]

[8] To establish a violation of the right of meaningful access to the courts, "a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim."[10] As the U.S. Supreme Court stated, the constitutional right to access the courts

> does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to

---

[4] *Murray v. Giarratano*, 492 U.S. 1, 109 S. Ct. 2765, 106 L. Ed. 2d 1 (1989).

[5] *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007).

[6] *Id*. at 679.

[7] *Lewis v. Casey*, 518 U.S. 343, 351, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996).

[8] *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999).

[9] See *Lewis v. Casey, supra* note 7.

[10] *White v. Kautzky, supra* note 5, 494 F.3d at 680.

slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.[11]

Instead, prisoners are guaranteed "the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."[12]

We begin with Payne's assignment of error on standing. Payne argues that the district court impermissibly applied federal principles on standing to his state action. We find no merit to this argument. The district court did not hold that Payne lacked standing to sue in Nebraska courts. Rather, the district court found that the underlying claim by Payne failed on the merits because there was not an actual injury. Although the U.S. Supreme Court's majority opinion in *Lewis v. Casey*[13] frames the issue of actual injury as a standing issue, an actual injury is also required to be successful on the merits. Therefore, we will not address standing, but, rather, we will address whether Payne demonstrated an actual injury sufficient to constitute a violation of his constitutional right to access the courts.[14]

In his brief, Payne argues that the law library regulations are not justified because of a lack of legitimate security considerations. However, whether the law library restrictions are justified becomes an issue only if a constitutional right is impinged.[15] And the constitutional right to access the courts is only impinged if the regulation(s) hindered a nonfrivolous and arguably meritorious legal claim.

---

[11] *Lewis v. Casey, supra* note 7, 518 U.S. at 355 (emphasis in original).

[12] *Id.*, 518 U.S. at 356.

[13] *Lewis v. Casey, supra* note 7.

[14] See *id*.

[15] See *Turner v. Safley*, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987).

The record demonstrates that Payne had seven pending "lawsuits" at the time of deposition. After reviewing the record, we find, as did the district court, that there is no evidence that the law library restrictions hindered a nonfrivolous and arguably meritorious legal claim challenging his sentence or the condition of his confinement. We now address each lawsuit.

Two of Payne's seven "lawsuits," which are better classified as "legal claims," involve tort claims raised with the State Tort Claims Board. As already stated, the constitutional right to access the courts guarantees access to the courts only to attack sentences, directly or collaterally, and to challenge the conditions of confinement.[16] Neither of the claims before the State Tort Claims Board challenges his sentence or condition of his confinement and, therefore, cannot be the basis for an actual injury.

Next, Payne has two claims, at both the state and federal level, that the library regulations have interfered with his ability to litigate constitutional violations regarding his prisoner mail. Although these claims deal with the condition of his confinement, they fail, because the evidence, even when viewed in the light most favorable to Payne, does not establish an actual hindrance to either claim. The federal lawsuit, case No. 4:11CV3017, has been filed in the U.S. District Court and has proceeded through the summary judgment stage. The federal lawsuit was still pending at the time of Payne's deposition for this case. Further, seeing that the federal suit was successfully filed and has been successfully defended by Payne through the summary judgment stage, the evidence simply does not support a finding that the law library restrictions prevented Payne from bringing his prisoner mail challenge to the federal court.

[9] Likewise, the evidence establishes that the state claim also has not been hindered. Although this claim has not yet been filed, the record does contain a complete draft of the prisoner mail complaint to be filed in state court. There is no evidence in the record that the complaint requires more library research time to be filed. In fact, Payne testified that

---

[16] *Lewis v. Casey, supra* note 7.

his concern "isn't the adequacy of the filing itself. It's the sufficiency of the time to litigate later." The U.S. Supreme Court in *Lewis v. Casey* specifically denied that the state was obligated to enable inmates "to *litigate effectively* once in court."[17] Rather, the state is required only to allow the prisoner the opportunity to bring to court a grievance.[18] Even when viewing the evidence in the light most favorable to Payne, there is no evidence that the regulations have hindered Payne's ability to bring his mail grievance to the attention of the state courts.

Further, Payne has had two civil actions filed in the district court for Johnson County under cases Nos. CI11-95 and CI11-123. But, again, the record establishes that neither was hindered by law library restriction, because both lawsuits were frivolous and without merit. In case No. CI11-95, Payne filed a lawsuit regarding telephone access. The district court dismissed the action because Payne failed to perfect service and because sovereign immunity barred the action. On appeal, the Nebraska Court of Appeals granted summary affirmance and cited *Martin v. Nebraska Dept. of Corr. Servs.*,[19] which held that sovereign immunity bars suits which seek to compel state officials to take affirmative action. Thus, there is no material issue of fact that the lawsuit was ultimately frivolous and that Payne did not suffer an actual injury in case No. CI11-95. No amount of legal research could have changed the outcome.

In case No. CI11-123, Payne attempted to appeal the denial of his informal grievances regarding the Department of Correctional Services' denial of his attempt to correspond by mail. The district court dismissed his claim under § 84-917(1), because the informal grievances did not constitute a final decision in a contested case. There is no argument made by Payne as to why additional law library time could have rectified the lack of a final decision in a contested case. Case No. CI11-123

---

[17] *Id*. at 354 (emphasis in original).

[18] *Id*.

[19] *Martin v. Nebraska Dept. of Corr. Servs.*, 267 Neb. 33, 671 N.W.2d 613 (2003).

was ultimately a meritless claim, and its dismissal cannot be attributed to the law library regulations.

[10] And finally, Payne had two postconviction actions pending at the time of his deposition. His postconviction action filed in Sarpy County District Court is being handled by hired counsel. Access to legal materials is required only for unrepresented litigants.[20] The other postconviction action is being handled pro se. The complaint has been filed and at the time of Payne's deposition was in process. There is again no evidence in the record on how the law library regulations hindered his ability to bring his pro se postconviction action to the court.

In conclusion, there is no material issue of fact that Payne has not suffered an actual injury due to the law library regulations he complains of. He has been able to repeatedly bring his grievances to court. These grievances are backed by research and are, considering their pro se nature, well written. What Payne is really complaining about is his lack of litigation success, not access to the courts. As explained above, the U.S. Supreme Court has explicitly stated that a prisoner's right to access the courts does not include the right to litigate effectively.[21] Therefore, we affirm the district court's grant of summary judgment. There is no material factual dispute that the law library regulations did not hinder a nonfrivolous and arguably meritorious legal claim regarding Payne's sentences or conditions of confinement.

## CONCLUSION

We find that there is no material factual dispute, even when viewing the facts in the light most favorable to Payne, that the law library regulations did not hinder a nonfrivolous and arguably meritorious legal claim regarding Payne's sentences or conditions of confinement. Therefore, the district court's order granting summary judgment is affirmed.

Affirmed.

---

[20] *Campbell v. Clarke*, 481 F.3d 967 (7th Cir. 2007).

[21] *Lewis v. Casey, supra* note 7.